TYLER, J.,
delivered the opinion of the court.
Margaret Beard, the mother of Thomas H. and John C. Kellam, being entitled tb the reversion in the northern moiety of a tract of land called Muir’s Neck, in the county of Accomac, which would fall in at the death of Elizabeth and Saralj Muir, united in a conveyance -with her husband Matthew Beard, on the first of September, 1808, by which the said Matthew and Margaret, in consideration of their natural love and affection for Thomas H. Kellam, gave, granted and conveyed to the said Thomas H. Kellam and his heirs,- all the northern moiety of the aforesaid neck of land, or the reversionary interest in the same, after the death of the said Margaret, “on the express condition, that the said Thomas pay over to his said brother John C. Kellam, at the end of one year after he attains lawful age, or gets possession of said reversion, ¿150, to enable his -brother to build on and improve the other half or *776 moiety of said neck of land. But in case the said Thomas H. Kellam fails to comply with the said covenant and condition, and persists in refusing' to make payment to his said brother of ,£150 at or upon the times stipulated, he, the said John C. Kel-lam, shall, in virtue of these presents, take possession of one-half of the said northern moiety of the said neck of land, or the said Margaret’s reversion in the same.” It appears that at the date of this conveyance, the said Thomas H. Kellam was about eighteen years old; that both he and his brother John C. died before the reversion fell in, the mother, the life tenant, outliving both. In July, 1847, the bill in this cause was filed by the executor of John C. Kellam against the executors of Thomas H. Kellam and the devisee of the reversion, alleging that the conveyance to Thomas H. Kellam created a charge *on the land in favor of John C. Kellam, and asking a decree against the devisee of the reversion, and in default of payment, that the land might be sold and the proceeds . applied in discharge of the £150 and in-terest.
By the counsel for the appellees it is in-' sisted, that the conveyance by which this reversion was transferred from Matthew and Margaret Beard to Thomas H. Kellam was a common law conveyance — a grant of the reversion, was a condition expressed in the grant, the object of which was, in case of its non-performance, to defeat the estate granted, by entry reserved, and that such reservation being to John C. Kellam a stranger, and not to the grantors or their heirs, -that the condition is void. And it is admitted, if such is- the character of the conveyance and such the stipulation, that -such is the law. But it is urged, on behalf of the appellants, that the stipulation in the conveyance is either a conditional limitation of the estate or a charge on the .land, and in either event it will enure to the benefit of John C. Kellam and his representatives.
We think the construction of the stipulation in the conveyance by the counsel for the appellees is the true construction, and that the conveyance is the common law conveyance by grant. At common law, feoffment and grant were the two great means by which lands were transferred; feoffment operating on the possession, and grant on the estate or interest which the grantor had in the estate granted and which he could lawfully convey, and grant was the conveyance applicable to reversion, rents and incorporeal hereditaments generally; and it is, we think, only necessary to read the conveyance to determine its character as a common law conveyance. If the stipulation, then contained in this conveyance be not a condition, the breach of which the grantor or his heirs only could take advantage of, it must be either a limitation or a conditional • limitation. That it is not a limitation, is manifest from ■ the fact that the entire interest in the reversion is granted to Thomas *H. Kellam and his heirs, leaving nothing for a limitation over to operate on, as by this species of conveyance a fee cannot be limited on a fee. And if it had been the object and intention of the grantor to create a limitation, instead of granting the reversion to Thomas H. Kellam and his heirs with the condition annexed, the grant of the reversion should have been to John C. Kellam to hold the same until Thomas H. Kellam paid to him the £150, and then over to Thomas H. Kellam; and on the payment of the money, the period of limitation having arrived, the estate of the grantee would have ceased and determined without entry or claim, no act being necessary to “vest the right in him having the next expectant interest.”
Having then ascertained that the stipulation in this grant is not a limitation, and that the conveyance is a common law conveyance, it would seem unnecessary to determine whether the provision in the grant • is a conditional limitation or not. Because, though it might be adjudged to be a conditional limitation, yet it would not be valid in a common law conveyance. See 4 Kent’s Com. 126-127, where it is said: “To get rid of the difficulty under the old rule of law, that an estate could not be limited to a stranger upon an event which went to abridge or determine the previously limited estate, a distinction was introduced in the case of wills between a condition and a conditional limitation, and which has been supposed to partake more of refinement and subtlety than of solidity;” and after giving an example of a conditional limitation, he adds: “these conditional limitations, though not valid in the conveyances at common law, yet within certain limits they are good in wills and conveyances to uses.” And further, it seems to be necessary to create a conditional limitation by any instrument, that a particular estate should be carved out of the fee, because it is said that conditional limitations and contingent remainders are in fact the same, and the distinction is merely verbal; although Mr. *Fearne maintains a contrary doctrine. See note to Kent’s Com. p. 127, and the authorities cited.
The appellant in his bill, however, alleges, that a charge on the' land conveyed was created to the extent of the £ISO, and that he is entitled in a court of equity to enforce this lien and to have one-half of the land sold to pay the said .sum. To construe the condition contained in this grant into a charge on the land, or to treat the land as a security for the debt, would be to make- a new contract between the parties. The language of the instrument is plain and unambiguous; it is a grant of the reversion in fee, with a condition annexed, that if the grantee failed to pay a third party (John C. Kellam) £150 at a stipulated period, that then John C. Kellam should take one-half of the reversion granted. If this condition was operative in favor of John C. Kellam, the remedy was at law, by *777 an action to obtain possession of the premises ; and if it was inoperative and void at law, a court of equity cannot give relief.
We are of opinion,therefore,that as the law was at the time this contract was made, no right accrued to John C. Kellam, which could be enforced by him or his representatives, either at law or in equity; that it is the case of a party claiming the benefit of a condition respecting an estate under an instrument to which he was no party and from whom no consideration moved; and that such a party was without remedy until the enactment of the 2d section of chap. 116, Code of 1849, and that this statute was enacted to embrace cases not before provided for. We are further of opinion, that in no aspect of the case could the executor of John C. Kellam claim title to the ,£150. The decree of the court below is therefore affirmed with costs.
Decree affirmed.